

### OFFICE OF THE ATTORNEY GENERAL OF TEXAS
### AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Arthur B. Knickerbooker
Adjutant General of Texas
Austin, Texas

Opinion No. O-7199

Re: Legal status of Texas State Guard
Post Exchanges

Dear General:

You ask for an opinion from this Department upon the above subject matter, your request being as follows:

"1. Attached hereto is correspondence from the War Assets Corporation, Consumer Goods Division, Fort Worth, Texas, requesting a legal opinion on the status of Texas State Guard Post Exchanges.

"2. It is requested that you submit to this Headquarters an opinion in accordance with the attached communication regarding the legal status of said Texas State Guard Post Exchanges."

The attached correspondence referred to contains a letter from Frank C. Langford, Consumer Goods Division, addressed to Mr. W. L. Atwood, Texas State Guard Post Exchange, 701 Ruth Street, Goose Creek, Texas, in which Mr. Langford says:

"* * * We have been advised by our General Counsel in Washington that the State Guard Post Exchanges are not eligible under the law to purchase surplus property under priority for resale unless it can be shown affirmatively by an opinion from the Attorney General, or other competent authority, that the State Guard Post Exchanges are instrumentalities of the State.

"It was our thought that inasmuch as the Army Post Exchanges and the Navy Ship Service Stores

Hon. Arthur B. Knickerbocker - Page 2

were eligible to make purchases of surplus prop-
erty for subsequent resale, the same ruling would
apply to the State Guard Post Exchanges.

"If you will submit this question to the State
Adjutant, Brigadier General Arthur B. Knickerbocker,
he can request a ruling from the Attorney General,
and if favorable, we shall be glad to comply with
your previous request for purchases of surplus
property.

"* * *"

In a subsequent letter you state that "this Depart-
ment has issued no Rules, Regulations, or Orders governing
Post Exchanges of the Texas State Guard."

The Texas State Guard, as the same is organized and
functioning under our statutes, (Vernon's Ann. Civ. Stat.,
Art. 5891a, as amended by the 48th Legislature, (1943)) is
an instrumentality of the State of Texas. Sec. 1(a) insofar
as pertinent is as follows:

"Whenever any part of the National Guard of
this State is in active Federal service, the
Governor is hereby authorized to organize and
maintain within this State during such period,
under such regulations as the Secretary of War
of the United States may prescribe for their or-
ganization, standards of training, instruction
and discipline, such military forces as the
Governor may deem necessary to defend this
State. Such forces shall be composed of of-
ficers appointed and commissioned and assigned
by the Governor or under his authority, to hold
office and assignment during the pleasure of the
Governor, and such able-bodied male citizens of
the State and such able-bodied residents of the
State who shall have declared their intention
to become citizens of the United States, as
shall volunteer for service therein, supple-
mented, if necessary, by men of the reserve
militia enrolled by draft or otherwise as pro-
vided by law. * * *"

Sec. 2(a) declares:

Hon. Arthur B. Knickerbocker- Page 3

"The Governor is hereby authorized to pre-
scribe rules and regulations not inconsistent
with the provisions of this Act governing the
enlistment, organization, administration, uni-
forms, equipment, maintenance, command, training
and discipline of such forces; provided such
rules and regulations, in so far as he deems
practicable and desirable, shall conform to ex-
isting law governing and pertaining to the
National Guard and the rules and regulations
promulgated thereunder."

Sec. 4 prescribes:

"For the use of such forces, the Governor is
hereby authorized to requisition from the Secre-
tary of War such arms and equipment as may be in
possession of, and can be spared by, the War De-
partment; and to make available to such forces the
facilities of State armories and their equipment
and such other State premises and property as may
be available. Authorization is hereby provided
for school authorities to permit the use of school
buildings by the Texas Defense Guard; provided fur-
ther that County Commissioners Courts, city authori-
ities, communities, and civic and patriotic organi-
zations are empowered and authorized by this Act
to provide funds, armories, equipment, material,
transportation, or other appropriate services or
facilities, to the Texas Defense Guard."

Sec. 5 contains the following:

"(a) Upon the request of the Governor of
another State, the Governor of this State may, in
his discretion, order any portion or all of such
forces to assist the military or police forces of
such other State, who are actually engaged in de-
fending such other State. Such forces may be re-
called by the Governor at his discretion."

These provisions of the statute make clear the legis-
lative intention to create and constitute such body a govern-
mental agency in the discharge of its authorized duties.

However, the status of Post Exchanges is quite a
different question. Some courts have held that an Army Post

Hon. Arthur B. Knickerbocker - Page 4

Exchange is not an instrumentality or department of the federal government. <u>People v. Standard Oil Co.</u>, 22 P. (2d) 2 (Calif. Sup. Ct., 1933), reversed on other grounds, 291 U. S. 242; <u>Keane v. United States</u>, 272 Fed. 577 (Circ. Ct. App., 1921); and cases cited. However, in <u>Standard Oil Co. v. Johnson</u>, 316 U. S. 481 (1942), the Supreme Court of the United States held that an Army Post Exchange is an arm of the Government, an integral part of the War Department, and, as such, partakes of whatever immunities the War Department may have under the Constitution and federal statutes. As shown by the following language quoted from its opinion in that case, the Supreme Court based its decision upon the federal statutes and Army Regulations authorizing such post exchanges:

"Since § 10 of the California Act made the tax inapplicable 'to any motor vehicle fuel sold to the government of the United States or any department thereof,' it was necessary for the Supreme Court of California to determine whether the language of this exemption included sales to post exchanges. If the court's construction of § 10 of the Act had been based purely on local law, this construction would have been conclusive, and we should have to determine whether the statute so construed and applied is repugnant to the Federal Constitution. But in deciding that post exchanges were not 'the government of the United States or any department thereof,' the court did not rely upon the law of California. On the contrary, it relied upon its determination concerning the relationship between post exchanges and the Government of the United States, a relationship which is controlled by federal law. <u>For post exchanges operate under regulations of the Secretary of War pursuant to federal authority. These regulations and the practices under them establish the relationship between the post exchange and the United States Government, and together with the relevant statutory and constitutional provisions from which they derive, afford the data upon which the legal status of the post exchange may be determined.</u> It was upon a determination of a federal question, therefore, that the Supreme Court of California rested its conclusion that, by § 10, sales to post exchanges were not exempted from the tax. Since this determination of a federal question was by a state court, we are not bound by it. We proceed to consider whether it is correct.

Hon. Arthur B. Knickerbocker - Page 5

"On July 25, 1895, the Secretary of War, under authority of Congressional enactments promulgated regulations providing for the establishment of post exchanges. These regulations have since been amended from time to time and the exchange has become a regular feature of Army posts. That the establishment and control of post exchanges have been in accordance with regulations rather than specific statutory directions does not alter their status, for authorized War Department regulations have the force of law.

"Congressional recognition that the activities of post exchanges are governmental has been frequent. Since 1903, Congress has repeatedly made subtantial appropriations to be expended under the direction of the Secretary of War for construction, equipment, and maintenance of suitable buildings for post exchanges. In 1933 and 1934, Congress ordered certain moneys derived from disbanded exchanges to be handed over to the Federal Treasury. And in 1936, Congress gave consent to state taxation of gasoline sold by or through post exchanges, when the gasoline was not for the exclusive use of the United States.

"The commanding officer of an Army Post, subject to the regulations and the commands of his own superior officers, has complete authority to establish and maintain an exchange. He details a post exchange officer to manage its affairs. This officer and the commanding officers of the various company units make up a council which supervises exchange activities. None of these officers receives any compensation other than his regular salary. The object of the exchanges is to provide convenient and reliable sources where soldiers can obtain their ordinary needs at the lowest possible prices. Soldiers, their families, and civilians employed on military posts here and abroad can buy at exchanges. The Government assumes none of the financial obligations of the exchange. But government officers, under government regulations, handle and are responsible for all funds of the exchange which are obtained from the companies or detachments composing

its membership. Profits, if any, do not go to
individuals. They are used to improve the soldiers'
mess, to provide various types of recreation, and
in general to add to the pleasure and comfort of
the troops.

"From all of this, we conclude that post ex-
changes as now operated are arms of the Government
deemed by it essential for the performance of govern-
mental functions. They are integral parts of the
War Department, share in fulfilling the duties en-
trusted to it, and partake of whatever immunities
it may have under the Constitution and federal stat-
utes. * * *"

Your supplemental letter states that you have
issued no rules, regulations, or orders governing Post Ex-
changes. We have found no Texas statutes on the subject.
Therefore, we must assume that any enterprises operating
under that name are doing so without the sanction or authority
of the State of Texas. Even assuming that the general stat-
utes setting up the Texas State Guard impliedly authorize
the Governor, through the Adjutant General of Texas, to
establish post exchanges as instrumentalities of the State
(which question we do not here decide), we understand that
no such action has been taken, that no regulations have
been issued by the Governor or the Adjutant General pertain-
ing to post exchanges, that the Legislature has not recog-
nized post exchanges as State activities, and that whatever
action has been taken towards their establishment has been
purely voluntary action on the part of individual officers
and members of local units of the Texas State Guard. There-
fore, having neither statutes nor regulations affording data
upon which the legal status of such post exchanges may be
determined, we must conclude that they are not instrumen-
talities or agencies of the State of Texas.

Very truly yours

ATTORNEY GENERAL OF TEXAS

APPROVED MAY 23, 1946

ATTORNEY GENERAL OF TEXAS

By Raymond A. Lynch
Raymond A. Lynch
Assistant

RAL:jt


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN